# UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF COLUMBIA

|  |  |
|---|---|
| WARREN COMMUNICATIONS NEWS, INC. <br> 2115 Ward Court, Washington, DC 20037 <br><br> Plaintiff, <br><br> vs. <br><br> NNR GLOBAL LOGISTICS USA, INC. <br><br> Defendant. | Civil Action No: <br><br> Trial by jury is demanded |

## COMPLAINT FOR COPYRIGHT INFRINGEMENT

Plaintiff Warren Communications News, Inc. ("Plaintiff" or "Warren") brings this Complaint for monetary damages and injunctive and other relief against Defendant NNR Global Logistics USA Inc. ("Defendant" or "NNR").  Warren alleges as follows:

## NATURE OF THE ACTION

1. This is a civil action for copyright infringement in violation of the United States Copyright Act, 17 U.S.C. §§ 101 *et seq.*  Defendant's continued, systematic, unauthorized copying of Warren's promptly registered copyrighted works was willful and substantially damaged Warren's core business of publishing leading national, business-to-business newsletters regarding the international trade, communications, and electronics industries.

2. By purchasing a single subscription to Warren's daily newsletter entitled *Export Compliance Daily* and making multiple unauthorized copies of each issue for use in its business, Defendant has caused significant harm to Warren and has earned unjust profits for itself.  Warren seeks all remedies afforded by the Copyright Act, including statutory damages, or actual

damages and Defendant's profits, and an award of costs including legal fees.  Because Defendant's infringements were willful and included as many as 250 or more registered works, and because a jury has discretion to award statutory damages of up to $150,000 for each willfully infringed registered work, Defendant's potential liability may approach or exceed $37,500,000.

## JURISDICTION AND VENUE

3. This is a civil action seeking monetary relief for copyright infringement under the laws of the United States, 17 U.S.C. § 101 *et seq.*

4. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, which provides original jurisdiction of all civil actions arising under federal law, and 28 U.S.C. § 1338(a), which provides original jurisdiction of all civil actions arising under federal copyright law.

5. Defendant is subject to personal jurisdiction in this District, and venue is proper here under 28 U.S.C. §§ 1391 and 1400(a).  The claim arises from Defendant's contacts with and in this District, including contacts by which the infringed works were obtained, and Defendant caused injury here where Plaintiff resides and holds the injured property.

## PARTIES

6. Plaintiff Warren is a corporation duly organized and existing under the laws of the State of Delaware with its principal place of business in Washington, DC.  Warren, a family-owned and -operated company, was founded in 1945 in Washington, DC, where it is still headquartered.  Originally established to cover the then-emerging medium of television, Warren today is a publisher of hard news and analysis in the fields of international trade, communications, the Internet, and adjacent topics.  Warren creates and publishes *Export Compliance Daily* approximately 250 times per year.  Warren has approximately 30 employees.

7. Defendant NNR is a business corporation organized under the laws of Illinois and having its principal executive office in Itasca, Illinois.  It is a for-profit business engaged in

supply chain management, freight forwarding, and transportation.  Defendant is a member of the Nishitetsu Group, a $4 billion global organization with over 18,000 employees.

## GENERAL ALLEGATIONS

8.  Warren is, and at all relevant times has been, the exclusive owner of all copyrights under Title 17 of the United States Code in certain original works of authorship, to wit, issues of the *Export Compliance Daily* newsletter published by Warren between June 1, 2022, and June 30, 2023 (collectively, "Copyrighted Materials").

9.  The Copyrighted Materials have been distributed by Warren to individuals who have entered subscription agreements or who have purchased individual issues of the newsletter. The Warren Copyrighted Materials are covered by certificates of copyright registration issued by the U.S. Copyright Office, identified as follows:

| Certificate Number | Publication Month | Number of Works | Registration Effective Date | Registration Decision Date |
|---|---|---|---|---|
| TX 9-147-599 | June 2022 | 26 | July 8, 2022 | July 26, 2022 |
| TX 9-171-279 | July 2022 | 20 | August 5, 2022 | September 21, 2022 |
| TX 9-195-129 | August 2022 | 26 | September 25, 2022 | November 17, 2022 |
| TX 9-216-588 | September 2022 | 29 | October 14, 2022 | January 26, 2023 |
| TX 9-207-931 | October 2022 | 22 | November 15, 2022 | January 3, 2023 |
| TX 9-223-196 | November 2022 | 20 | December 16, 2022 | February 13, 2023 |
| TX 9-238-597 | December 2022 | 23 | January 5, 2023 | March 27, 2023 |
| TX 9-246-136 | January 2023 | 21 | February 22, 2023 | April 13, 2023 |
| TX 9-253-853 | February 2023 | 21 | March 18, 2023 | May 1, 2023 |
| TX 9-265-044 | March 2023 | 26 | May 22, 2023 | May 22, 2023 |
| TX 9-267-820 | April 2023 | 22 | May 16, 2023 | May 30, 2023 |
| TX 9-305-544 | May 2023 | 22 | June 8, 2023 | August 31, 2023 |
| TX 9-325-431 | June 2023 | 22 | July 26, 2023 | October 31, 2023 |

10.  Among the rights granted to Warren by the Copyright Act is the exclusive right to reproduce the Copyrighted Materials and to distribute the Copyrighted Materials to the public.

11.  Defendant first became a subscriber to *Export Compliance Daily* on or about June 14, 2022.  The agreement under which a corporate subscriber obtained access to *Export Compliance Daily* required the subscriber to identify a single "authorized recipient" who would be authorized to receive issues of *Export Compliance Daily.*

12. On or about June 14, 2022, Ike Miura, Export Compliance Manager of Defendant, became the authorized recipient of Defendant's single subscription to *Export Compliance Daily*. He remained the sole authorized recipient at all times thereafter until the subscription expired on or about June 14, 2023.

13. The license agreement under which Defendant received access to *Export Compliance Daily*, as signed by Mr. Miura on or about June 14, 2022, and subsequently accepted by Warren in Washington, DC, provided the following terms and conditions:

> You, as the designated individual subscriber, may view the Executive Summary, PDF newsletter and/or bulletins on a computer or similar device. You may print one paper copy for your own use. Copies created as part of the normal background operation of a computer system and not normally viewed (e.g., system back-up), are permissible. You individually may use your password to access and view the material on the ***Export Compliance Daily*** website and print or save one copy of articles or search results for your own use. You may not share your password and no one but you is authorized to use it.
>
> Except as provided above, no copying or distribution in any media is authorized. For example, no part of an Executive Summary, a PDF newsletter, a bulletin, or a website article may be forwarded or posted to facilitate viewing by others, except by prior written permission authorized by us. Unauthorized access, viewing, copying or distribution infringes our rights and may have serious consequences. A "share" function, if one is offered, must be used directly and does not authorize other sharing. To ensure electronic delivery accuracy and copyright compliance, we may choose to use a monitoring service. This service provides us certain technical and usage data from any computer that opens the Executive Summary or the complete newsletter. We will not share this information with anyone outside the company, nor will we use it for any commercial purpose. More information about our data collection practices is at https://warren-news.com/privacy.

14. Under Defendant's subscription, Warren delivered *Export Compliance Daily* electronically to Mr. Miura at his NNR email address. Each issue was delivered as a PDF attachment to an email sent from Warren's Washington, DC office.

15. Each delivery email providing the Personal Executive Summary of *Export Compliance Daily* contained a statutory copyright notice and warned that "reproduction or retransmission in any form of either the email or the underlying content, without written permission, is a violation of Federal Statute (17 U.S.C. 101 *et seq.*)."

16. Each issue of *Export Compliance Daily* included a statutory notice of copyright and a warning that "reproduction or retransmission in any form, without written permission, is a violation of Federal Statute (17 USC 101 et seq.)."

17. Additionally, issues of *Export Compliance Daily* frequently included the following boxed warning:

> **It's Against the Law…**
>
> … to copy, forward or disseminate this newsletter or its Executive Summary except as authorized by your subscription agreement. Federal copyright law (17 USC 101 et seq.) makes infringers liable for statutory damages awards of up to $150,000 per issue copied.
>
> Warren Communications News, Inc. frequently has taken action against individuals and firms that infringed our copyrights, and we will continue to do so. Firms should train and supervise their personnel to guard against illegal copying of this publication, which subsists primarily on subscription revenue. To monitor copyright compliance, we may choose to use a tracking service.

18. On information and belief, on or about June 21, 2022, Mr. Miura began making and providing unauthorized copies of the Copyrighted Materials to other present and former employees and officers of Defendant and to locations outside of Defendant's offices. Defendant knew of and authorized these infringing activities through its agents, including Mr. Miura; benefitted from them; supplied the means of copying and distributing; and had the ability to control the infringements. On information and belief, Defendant and its employees and officers receiving unauthorized copies of the Copyrighted Materials caused unauthorized copies of those

Copyrighted Materials to be made and/or distributed. Defendant's personnel committed all relevant acts in the scope of their employment and for Defendant's business.

19. On information and belief, 250 separate issues of the Copyrighted Materials were copied and disseminated by Defendant, all without authority from Warren.

20. Warren discovered the unauthorized copying during Spring 2023 and caused its legal counsel promptly thereafter to send Defendant's President, Koichi Imamura, a cease-and-desist letter on May 8, 2023. The letter offered the opportunity to discuss the possibility of an amicable resolution. Neither Warren nor its counsel received any response to that letter.

21. On or about June 15, 2023, the subject *Export Compliance Daily* subscription expired. Because of the unresolved infringing practices of the authorized recipient and Defendant, Warren declined to discuss renewal of the subscription.

22. Warren's counsel sent a second cease-and-desist letter to Mr. Imamura on June 2, 2023. That letter also offered the opportunity to discuss an amicable settlement. Neither Warren nor its counsel received any response to that letter.

23. On or about October 12, 2023, Warren's counsel sent a letter to Jeff McDonald, who Warren understood to be Defendant's chief legal officer, as well as to Mr. Imamura, requesting a response to Warren's cease-and-desist letter and again offering the opportunity to discuss an amicable resolution. Neither Warren nor its counsel received a response to that letter.

24. On or about December 12, 2023, Warren's counsel sent Mr. Imamura and Mr. McDonald a short letter and a revised draft complaint, providing Defendant one final opportunity to offer a response. Neither Warren nor its counsel received any response to that letter.

## **CLAIM FOR RELIEF**

(Infringement of Federally Registered Copyright – 17 U.S.C. § 501 *et seq.*)

25. Plaintiff incorporates by reference paragraphs 1 through 24 of this Complaint as if set forth in full herein.

26. Warren is the exclusive owner of valid and timely copyright registrations for the Copyrighted Materials.

27. Defendant's unauthorized copying and distribution of the Copyrighted Materials directly infringes Warren's registered copyrights therein in violation of 17 U.S.C. § 101 *et seq*. Defendant also is liable for the further infringements that occurred when copies it delivered were used as Defendant induced, intended, and encouraged. Defendant is liable as a direct, vicarious, and contributory infringer.

28. Defendant's acts of infringement have been willful, intentional, and in reckless disregard of and indifference to the rights of Plaintiff. They have injured and damaged Plaintiff in an amount to be determined.

29. At any time before final judgment, Plaintiff is entitled to elect to receive statutory damages in lieu of actual damages and profits. *See* 17 U.S.C. § 504(c). For willful copyright infringement, the jury may award up to $150,000 for each of the 250 infringed issues, i.e., approximately $37,500,000. Defendant's infringement of each work was willful.

30. Plaintiff alternatively may choose to recover Defendant's profits attributable to infringement plus Plaintiff's actual damages. *See* 17 U.S.C. § 504(a). The statute provides that "[i]n establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenues, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." 17

U.S.C. § 504(b). Defendant's gross revenues over the period of the infringement are not known at this time but will be determined during discovery.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment in its favor and against Defendant as follows:

1. For a money judgment against Defendant:

(a) For Plaintiff's actual damages for infringement, and, after an accounting, for profits attributable to the infringement; or

(b) At Plaintiff's election prior to the entry of final judgment in this case, and as an alternative to actual damages and profits, an award of statutory damages as permitted by the Copyright Act, for each of Plaintiff's timely registered works infringed, including enhanced statutory damages of $150,000 per work for each of the works willfully infringed and timely registered; and

2. For an injunction against further infringement;

3. For an award of pre-judgment and post-judgment interest;

4. For Plaintiff's costs of this action, including Plaintiff's reasonable attorneys' fees incurred in this action; and

5. For such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury.

Respectfully submitted,

By: /s/ Mark Sweet
Mark Sweet (Bar No. 490987)
msweet@wiley.law
Bruce L. McDonald (Bar No. 73429)
bmcdonald@wiley.law
Corey Weinstein (*pro hac vice application pending*)
cweinstein@wiley.law
WILEY REIN LLP
2050 M Street NW
Washington, DC 20036
(202) 719-7000

*Counsel for Plaintiff Warren Communications News, Inc.*

Dated: April 3, 2024